UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------X
ANDREW THOMAS,

                Plaintiff,                      Civil Case No: 3:19-CV-13415

   -against-

PERMAFLOOR, LLC,                          **COMPLAINT**
PERMAFLOOR SOUTHEAST, LLC,
PERMAFLOOR KEYSTONE, INC.,
DREW (last name unknown), individually,
JASON HIECKE, individually, and           Plaintiff Demands a
CHRISTOPHER ROSWELL, individually,       Trial by Jury

                Defendants.
---------------------------------------------------------------X

       Plaintiff, ANDREW THOMAS (hereinafter referred to as "Plaintiff") by and through his attorneys, Derek Smith Law Group, PLLC, hereby complains of The PERMAFLOOR Defendants, LLC, PERMAFLOOR SOUTHEAST, LLC, PERMAFLOOR KEYSTONE, INC. (hereinafter collectively referred to as "The PERMAFLOOR Defendants"), DREW (last name unknown) (hereinafter referred to as "DREW"), individually, JASON HIECKE (hereinafter referred to as "HIECKE"), individually, and CHRISTOPHER ROSWELL (hereinafter referred to as "ROSWELL"), individually (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, and the New Jersey Law Against Discrimination ("NJLAD") based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*,

383 U.S. 715 (1966), and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, race discrimination, color discrimination, hostile work environment, retaliation and unlawful termination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and 42 U.S.C. §1981. The Court also has jurisdiction pursuant to 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. This case involves questions of Federal law.

3. Additionally, the Court has supplemental jurisdiction under the State laws.

4. On or about September 14, 2018, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about March 11, 2019, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in that the events giving rise to this action arose within the District of New Jersey.

## PARTIES

8. Plaintiff is an individual African American man who is a resident of the State of New Jersey.

9. At all times material, Defendant PERMAFLOOR, LLC is a domestic limited liability company duly existing by the virtues and laws of the State of New Jersey.

10. At all times material, Defendant PERMAFLOOR SOUTHEAST, LLC is a domestic limited liability company duly existing by the virtues and laws of the State of New Jersey.

11. At all times material, Defendant PERMAFLOOR KEYSTONE, INC. is a domestic limited liability company duly existing by the virtues and laws of the State of New Jersey.

12. At all times material, The PERMAFLOOR Defendants, LLC, PERMAFLOOR SOUTHEAST, LLC, and PERMAFLOOR KEYSTONE, INC. (hereinafter collectively referred to as "The PERMAFLOOR Defendants") were single integrated employers of Plaintiff.

13. At all times material, The PERMAFLOOR Defendants own and operate a professional flooring company.

14. At all times material, Defendant DREW is an individual, Caucasian man who resides in the State of New Jersey.

15. At all times material, The PERMAFLOOR Defendants employed Defendant DREW.

16. At all times material, Defendant DREW held supervisory authority over Plaintiff with regard to his employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

17. At all times material, Defendant HIECKE is an individual, Caucasian man who resides in the State of New Jersey.

18. At all times material, Defendants PERMALFOOR employed Defendant HIECKE.

19. At all times material, Defendant HIECKE held supervisory authority over Plaintiff with regard to his employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

20. At all times material, Defendant ROSWELL is an individual, Caucasian man who resides in the State of New Jersey.

21. At all times material, The PERMAFLOOR Defendants employed Defendant ROSWELL as a

Human Resources Manager.

22. At all times material, Defendant ROSWELL held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

## MATERIAL FACTS

23. On or about October 28, 2017, Defendants hired Plaintiff as a laborer.

24. Throughout the course of Plaintiff's employment, Defendants subjected Plaintiff to a hostile work environment on the basis of his race and color, and knowingly permitted employees (some of whom were Plaintiff's supervisors) to discriminate against Plaintiff based on the same.

25. In addition to the discriminatory and hostile work environment based on race and color that Defendants subjected its employees, Defendants also knowingly permitted Defendant HIECKE to discriminate against numerous African American employees (including Plaintiff).

26. Defendant HIECKE openly exhibited a pattern and practice of making reprehensible and dehumanizing racist comments towards Defendants' subordinate employees.

27. In or around November 2017, Defendants DREW and HIECKE informed Plaintiff that they were members of a White Supremacist group.

28. At the same time, Defendant HIECKE also showed Plaintiff photos of himself in a White Supremacist uniform which displayed multiple patches that read "WHITE POWER."

29. Plaintiff was appalled that staff members – especially two supervisors – would openly display and promulgate their contemptible racist beliefs. Plaintiff immediately became extremely uncomfortable and the work environment became hostile.

30. In or around December 2017, while at Defendants' Christmas party, Defendant DREW approached Plaintiff with a shotgun shell and stated, "This is what *your people* get."

31. Defendants subjected Plaintiff to a hostile work environment on the basis of his race and color, which was sufficiently severe and/or pervasive so as to unreasonably interfere with the workplace environment.

32. Defendants discriminated against Plaintiff on the basis of his race and color.

33. Defendants DREW and HIECKE blatant and reprehensible racist comments caused Plaintiff to suffer severe anxiety and depression.

34. Several days later while on a job-site, Plaintiff asked Defendant DREW why he had given Plaintiff the bullet. Defendant DREW angrily replied, "Next time you fuck with me, that bullet is going to go in your back."

35. Plaintiff was shocked and appalled by the discriminatory and hostile conduct of his supervisor and immediately felt extreme emotional anguish.

36. In or around January 2018, Defendant HIECKE asked Plaintiff about his racial background.

37. Plaintiff responded that he was both African American and Italian. Defendant HIECKE immediately exclaimed, "OH, SO YOU'RE A HALF BREED."

38. "HALF-BREED" is a contemptuous term "used to describe anyone who is of mixed race." Please see https://en.wikipedia.org/wiki/Half-breed.

39. Defendants subjected Plaintiff to a hostile work environment on the basis of his race and color.

40. Plaintiff felt extremely dehumanized and degraded by Defendant HIECKE's racist comments.

41. To make matters worse, Defendant HIECKE often preached about his belief in the separation

of races and his opposition to "racial-mixing" in front of Plaintiff.

42. Additionally, Defendant HIECKE also openly displayed the "WHITE POWER" patches on his White Supremacist uniform together with a tattoo of a swastika.

43. The following are photos of HIECKE proudly displaying anti-Semitic and racist symbols:







44. For instance, in or around January 2018, while working a flooring job, Defendant HIECKE

yelled at Plaintiff, "WHEN I TELL YOU TO DO SOMETHING, YOU DO IT, YOU FUCKING NIGGER!"

45. Moreover, Defendant HIECKE made racial remarks toward Plaintiff, stating "*You people* are lazy," indicating that Plaintiff's work ethic was sub-par because he is African American.

46. Defendant HIECKE constantly degraded and dehumanized Plaintiff by calling him deplorable and offensive racial slurs such as "nigger."

47. Plaintiff was deeply disturbed by the dehumanizing racial slurs and suffered from severe anxiety, fear, and depression while working with Defendant HIECKE.

48. Defendants subjected Plaintiff to a hostile work environment on the basis of his race and color, which was sufficiently severe and/or pervasive so as to unreasonably interfere with the workplace environment.

49. Defendants discriminated against Plaintiff on the basis of his race and color.

50. After the above incident, in or around January 2018, Plaintiff complained about the racism and discrimination to PERMAFLOOR's Employee, DOMINIC (last name unknown) (hereinafter referred to as "DOMINIC"), who was the foreman on the job which Defendant HIECKE and Plaintiff were working together.

51. DOMINIC was within earshot of Defendant HIECKE when he called Plaintiff a "nigger," and assured Plaintiff that he would notify Defendant ROSWELL (PERMAFLOOR's Human Resources Manager).

52. Despite Plaintiff's complaint, at all times material, neither DOMINIC nor Defendant ROSWELL took any immediate corrective action to remedy the discrimination and hostile work environment to which Defendants subjected Plaintiff.

53. Defendants failed to take any immediate remedial action to remedy the severe discrimination

and hostile work environment to which Defendants subjected Plaintiff.

54. As a result of Defendants' failure to take remedial action. Defendant HIECKE continued to relentlessly discriminate against Plaintiff on the basis of his race and color.

55. In or around February 2018, Defendant HIECKE was performing work with Plaintiff in a trailer and informed Plaintiff, "I'm glad I don't have to nigger-rig shit anymore."

56. Shortly thereafter, in or around February 2018, Plaintiff again complained to DOMINIC about Defendant HIECKE's racist comments.

57. DOMINIC merely responded, "Oh, I forgot."

58. On occasion, Plaintiff and other employees were required to stay in hotels while completing jobs that were outside of the state of New Jersey.

59. In addition to Defendants' failure to take any corrective action, Defendants actually placed Plaintiff and Defendant HIECKE in the same hotel room on multiple occasions, even after Plaintiff's complaints.

60. On or about February 20, 2018, Defendant HIECKE openly displayed a swastika tattoo in front of Plaintiff while working on a flooring job.

61. Plaintiff asked Defendant HIECKE if there was in fact a tattoo of a swastika on his body. Defendant HIECKE responded, "yeah, it's a fucking Swastika, AND?"

62. After this incident, Plaintiff begged DOMINIC to reassign Defendant HIECKE out of Plaintiff's room.

63. The following day, in or around February 2018, Defendants assigned Plaintiff from a job in Maryland to a job in Virginia.

64. Upon Plaintiff's arrival to the job-site in Virginia, PERMAFLOOR's Foreman, BRIAN BARRY (hereinafter referred to as "BARRY"), informed Plaintiff that Defendant HIECKE

was indeed a leader in the Nazi Party and did have a tattoo of a swastika on his body.

65. Plaintiff complained to BARRY, informing him of the dehumanizing and reprehensible slurs that Defendant HIECKE made to Plaintiff. Moreover, Plaintiff complained to BARRY as to why Defendants continued to schedule him to work with Defendant HIECKE despite his numerous complaints.

66. In or around March 2018, BARRY notified Plaintiff that Defendant ROSWELL wanted to speak with him.

67. In or around March 2018, Defendant ROSWELL met with Plaintiff and unlawfully terminated Plaintiff citing performance issues as the basis for Plaintiff's termination.

68. Defendants retaliated against Plaintiff by unlawfully terminating his employment in response to engaging in protected activity by complaining about the discrimination and hostile work environment to which Defendants subjected Plaintiff.

69. Defendants' proffered reason for terminating Plaintiff was merely pretextual.

70. Prior to Plaintiff engaging in protected activities, he had never been cited or disciplined for his work performance with PERMAFLOOR.

71. In addition, Defendants called the police on Plaintiff, alleging that Plaintiff was involved in a domestic dispute in the parking lot.

72. At all times material, no charges were ever brought against Plaintiff as the matter was determined to be unsubstantiated.

73. Defendants' repugnant acts warrant punitive damages as they clearly depict Defendants objective to further retaliate against Plaintiff.

74. Defendants failed to take any reasonable corrective or remedial action in response to Plaintiff's numerous complaints against Defendants HIECKE and DREW.

75. Defendants knowingly and willingly caused Plaintiff extreme anguish and emotional distress.

76. As a result of Defendants' actions, Plaintiff felt extremely degraded, victimized, dehumanized, and emotionally distressed.

77. As a result of Defendants' discriminatory an intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

78. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non- pecuniary losses. Plaintiff has further experienced severe emotional distress.

79. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

80. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

81. Plaintiff claims actual discharge and seeks reinstatement as he was unlawfully terminated because he complained of the unlawful discriminatory conduct of Defendants.

82. The above are just some examples of some of the unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION
UNDER FEDERAL LAW
42 U.S.C. Section 1981
(AGAINST ALL DEFENDANTS)**

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

84. 42 U.S.C. Section 1981 states in relevant part as follows:

85. "Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. §1981.

86. Plaintiff, a member of the African American race, was discriminated against by Defendants because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(AGAINST THE PERMAFLOOR DEFENDANTS)**

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin; . . ."

89. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of his race and color, and causing a hostile work environment.

90. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of Title VII.

91. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (AGAINST THE PERMAFLOOR DEFENDANTS)

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)   provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

94. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

95. Plaintiff hereby makes a claim against Defendants under all applicably paragraphs of Tile VII.

96. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER NEW JERSEY STATE LAW
## (AGAINST ALL DEFENDANTS)

97. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

99. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 *et seq.*, by discriminating against the Plaintiff because of his race and color, together with creating a hostile work environment.

100. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

101. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
FOR RETALIATION
UNDER NEW JERSEY STATE LAW
(AGAINST ALL DEFENDANTS)**

102. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

103. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

104. "For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

105. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 *et seq.*, by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

106. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION
FOR AIDING AND ABETTING
UNDER NEW JERSEY STATE LAW**

107. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

108. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice:

109. "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

110. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 *et seq.*, by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

111. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

Dated:   New York, New York
         June 5, 2019

                                        **DEREK SMITH LAW GROUP, PLLC**
                                        *Attorneys for Plaintiff*

                                        /s/Zachary Holzberg
                                        Zachary Holzberg, Esq.
                                        One Penn Plaza, Suite 4905
                                        New York, NY 10119
                                        (212) 587-0760